UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**RONDEEN W.,**

   **Plaintiff,**

             **Case No. 2:20-cv-7207**

 **v.**           **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

   **Defendant.**

## OPINION AND ORDER

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Rondeen W. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's decision.

## I. PROCEDURAL HISTORY

   On October 28, 2016, Plaintiff filed an application for benefits, alleging that she has been disabled since December 20, 2012. R. 67, 80, 160−61. The application was denied initially and upon reconsideration. R. 95−100, 102−04. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 105. Administrative Law Judge ("ALJ") Scott Tirrell held a hearing

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

on November 9, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 29–66. In a decision dated February 27, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 20, 2012, Plaintiff's alleged disability onset date, through December 31, 2016, the date on which Plaintiff was last insured for benefits. R. 12–23. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 14, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 29, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 6.[2] On October 30, 2020, the case was reassigned to the undersigned. ECF No. 8. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record").  Evidence is not substantial if "it is

3

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 36 years old on the date on which she was last insured for disability insurance benefits, December 31, 2016. R. 14, 22. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 20, 2012, her alleged disability onset date, and December 31, 2016, her date last insured. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bilateral knee osteoarthritis, status-post bilateral total knee replacement, and left total knee replacement revision surgery; lumbar degenerative disc disease with scoliosis; and obesity. *Id.* The ALJ also found that the diagnosed impairments of anemia and adjustment disorder with depressed mood were not severe. R. 14−15.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 15−16.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 16−21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a postal clerk, home health aide, pastry cook, and baker. R. 21−22.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 32,000 jobs as a callout operator; approximately 463,000 jobs as a spotter; approximately 136,00 jobs as an order clerk—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 22−23. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 20, 2012, her alleged disability onset date, through December 31, 2016, the date on which she was last insured. R. 23.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the

Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 14. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 15.

## IV.   RELEVANT MEDICAL EVIDENCE

On December 15, 2015, Plaintiff presented to Richard E. Pearl, M.D., Plaintiff's treating physician, following a right total knee replacement. R. 336−37, 668−69 (duplicate). Dr. Pearl assessed Plaintiff as "status post work-related injury in 2008[,] status post right knee replacement in 2014 suffering from consequential left knee progressive degenerative changes." R. 336, 668. Dr. Pearl opined Plaintiff was totally disabled and "is unable to work at this time due to persistent right knee pain and evolution of left knee degenerative changes." *Id*. ("Dr. Pearl's 2015 opinion").

On February 26, 2016, Plaintiff again presented to Dr. Pearl for examination. R. 317. Dr. Pearl again opined that Plaintiff was totally disabled and "unable to work." *Id*. ("Dr. Pearl's 2016 opinion").

On January 17, 2017, Dr. Pearl noted that Plaintiff "is status post bilateral total knee replacements. She is getting very active at this point in time but has intermittent pain as she gets more active." R. 440. He went on to note and opine as follows: "To help her with her transition to activity and return to work, I have ordered bilateral knee supports with metal stays. This will transition her to an eight-hour work day but over a period of time. I feel at this point in time she can go back to work and function as a pastry chef." *Id*. ("Dr. Pearl's 2017 opinion").

8

## V.     DISCUSSION

### A.     Medical Records of Steven Horowitz, M.D., and Pierce Ferriter, M.D.

Plaintiff argues that the ALJ "ignored" medical records from Steven Horowitz, M.D., and Pierce Ferriter, M.D., and failed to explain why he ignored them, thus warranting remand.[3] *Plaintiff's Brief*, ECF No. 14, pp. 35–36. Plaintiff's arguments are not well taken.

As to Dr. Horowitz' records, Plaintiff provides only the conclusory assertion: "The ALJ ignored records from Dr. Horowitz in Exhibit 14F without any explanation, which highlight the Plaintiff's current level of functioning. (AR 592–626 [R. 555–89])[4][.]" *Id.* at 35. Even assuming that the ALJ erred in failing to specifically address Dr. Horowitz's records, Plaintiff has not explained what evidence of any functional limitations those records contain and why the ALJ's failure to explicitly discuss these records resulted in reversible error. *See id.*; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *cf. Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted).

Moreover, Plaintiff specifically acknowledges that Dr. Horowitz's records reflect only

---

[3] To the extent that Plaintiff complains that the ALJ "ignores" the records of her treating physician, Michael Palmeri, M.D., *id.*, the Court addresses that argument later in this decision along with Plaintiff's arguments further challenging the weight that the ALJ assigned to this physician's assessments.

[4] Confusingly, Plaintiff throughout her brief cites to the "PAGEID" number listed at the top right of each administrative record page rather than to the Bates-stamped number appearing in the lower right of each page. The Court cites herein to the Bates-stamped number.

her "*current* level of functioning[,]" *i.e.*, in 2017 or 2018 (the dates of Dr. Horowitz's records) or

in 2021 (date on which she submitted her brief to this Court). *Plaintiff's Brief*, ECF No. 14, p. 35

(emphasis added). However, the relevant time period in this case is December 20, 2012,

Plaintiff's alleged disability onset date, through December 31, 2016, the date on which she was

last insured; in other words, Plaintiff must prove that the onset of her disability occurred while

she was insured for benefits under 42 U.S. § 423(c). *Dunson v. Comm'r Soc. Sec.*, 615 F. App'x

65, 67 (3d Cir. 2015); *Hyler v. Colvin*, No. CIV.A. 12-4974, 2013 WL 3766817, at *9 (E.D. Pa.

July 18, 2013) ("Because this case is an application for DIB, the plaintiff must prove that the

onset of his disability occurred while plaintiff was insured under 42 U.S.C. § 423(c)."). Notably,

"medical evidence generated after the date last insured is only relevant to the extent it is

reasonably proximate in time or relates back to the period at issue." *Alston v. Astrue*, No. 10-cv-

839, 2011 WL 4737605, at *3 (W.D. Pa. Oct. 5, 2011); *see also Beety-Monticelli v. Comm'r of

Soc. Sec.*, 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ reasonably found that a

doctor's opinion rendered nearly five years after the date last insured "lacked probative value"

because it "shed no light" on the claimant's condition during the relevant period). Here, Plaintiff

has failed to explain how Dr. Horowitz's records, which reflect treatment in 2017 and 2018, are

relevant to or otherwise relate back to the relevant period in this case. *See Plaintiff's Brief*, ECF

No. 14, p. 35. Accordingly, the Court cannot conclude that the ALJ's failure to specifically

discuss Dr. Horowitz's records resulted in reversible error.

Plaintiff next complains that the ALJ "ignore[d]" evidence from Dr. Ferriter, arguing in

toto as follows:

> The ALJ ignores the medical record and independent medical assessment from Dr.
> Pierce J. Ferriter [who examined Plaintiff for purposes of a workers' compensation
> claim on June 30, 2017], which noted that Plaintiff had restrictions with her
> activities of daily living including, difficulty walking for 1 block secondary to pain,

> inability to stand for more than 5 minutes before she has to sit secondary to pain, and ability to sit for 5 minutes before she has to change positions secondary to pain. (Exhibit 19F - AR 710-717 [R. 672−79])[.]

*Id*. However, to the extent that Plaintiff suggests that Dr. Ferriter found these specific functional limitations, she misreads or mischaracterizes the evidence. Instead, Dr. Ferriter was simply reporting Plaintiff's subjective assertions as to her own perceived limitations. *See* R. 673 ("*Ms. Walters states* that she can walk for 1 block secondary to pain. She can stand for 5 minutes before she has to sit secondary to pain. She can sit for 5 minutes before she has to change positions secondary to pain.") (emphasis added). The mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec*., No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Moreover, the ALJ specifically considered Plaintiff's subjective complaints, R. 18−21, and for the reasons discussed later in this decision, the Court concludes that the ALJ properly discounted those complaints.

Accordingly, Plaintiff has not established that the ALJ's failure to explicitly discuss the records of Dr. Horowitz or Dr. Ferriter requires remand in this case.

B.    **Opinions of Treating Providers and Physical Therapy Records**

Plaintiff challenges the ALJ's consideration of the opinions of treating providers Richard Pearl, M.D., David Deramo, M.D., Michael Palmeri, M.D. *Plaintiff's Brief*, ECF No. 14, pp. 36–37. Plaintiff also complains that the ALJ failed to assign any weight to her "physical therapy records and their analysis of her activities of daily living." *Id*. at 37. Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli,* 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[5] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight,

_____

[5] As previously noted, Plaintiff's claim was filed on October 26, 2016. For claims filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a)

especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still

---

(providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'"
*Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In the case presently before the Court, the ALJ found at step four of the sequential evaluation process that Plaintiff had the RFC to perform

> sedentary work as defined in 20 CFR 404.1567(a) except that the claimant could: occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance; occasionally stoop; never kneel, crouch or crawl; and could never use the lower extremities for pushing/pulling, such as with the use of foot pedals. Further, the claimant would require one to two minutes of standing at the workstation after 30 minutes of sitting, and would require one to two minutes of sitting at the work station after 30 minutes of standing or walking, during which periods the claimant would be off task in addition to usual breaks; would require the use of a cane with the dominant hand for standing and walking; could never work at unprotected heights or work with exposed machinery; could tolerate occasional exposure to extreme cold, extreme heat, wetness, humidity, or to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation; but could never operate heavy equipment. Additionally, the claimant can understand, remember, and carry out simple instructions; can perform simple, routine tasks; can make simple work-related decisions; would be able to adapt to changes in routine work settings; and can respond appropriately to supervision, coworkers, and usual work situations.

R. 16–17. In reaching this determination, the ALJ, *inter alia*, weighed the treating opinions of Richard Pearl, M.D., David Deramo, M.D., Michael Palmeri, M.D., and considered Plaintiff's physical therapy records. R. 18–21. Plaintiff challenges the ALJ's evaluation of this evidence.

### 1.     Richard Pearl, M.D.

Plaintiff first challenges the ALJ's consideration of the medical records and opinion of Richard Pearl, M.D., *Plaintiff's Brief*, ECF No. 14, p. 36. The ALJ summarized these records and assigned "little weight" to Dr. Pearl's 2015 and 2016 opinions that Plaintiff was disabled and unable to work and assigned "some weight" to his 2017 opinion that Plaintiff could function as a pastry chef, explaining as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are not supported by the objective evidence in the record. A review of the medical record indicates that the claimant sustained injuries to the bilateral knees in a work-related accident in 2008. Thereafter, she began treatment with Dr. R. Pearl in March 2013 for ongoing pain in the bilateral knees with positive grind test, limited ranges of motion, tenderness, crepitus and swelling. A March 2013 MRI of the left knee showed status-post previous arthroscopy and debridement of the meniscal tear, grade loss of articular cartilage within the medial patellar facet, complex tear of the posterior horn and body of the medial meniscus within both horizontal and radial, thinning of the articular cartilage within the medial compartment with peripheral osteophytosis, and patchy T2 hyperintensity within the articular cartilage overlying the medial patellar facet consistent with chondromalacia, and small suprapatellar joint effusion (Exhibit 2F, pages 38-39); and MRI of the right knee in March 2013 showed complete tear of the posterior horn and body of the medial meniscus with both horizontal and radial components and an associated parameniscal cyst, thinning of the articular cartilage within the medial compartment with peripheral osteophytosis. patchy T2 hyperintensity within the articular cartilage overlying the medial patellar facet consistent with chondromalacia and small suprapatellar joint effusion (Exhibit 2F, pages 40-41); in December 2013, x-ray of the left knee showed chronic mild left knee osteoarthritic changes and x-ray of the right knee-showed chronic right knee osteoarthritic changes (Exhibit 2F, pages 42-43). During care at this time, Dr. Pearl assessed that the claimant was disabled and unable to work (Exhibit 2F). . . .
>
> Consequently, the claimant underwent right total knee replacement on December 8, 2014 (Exhibit 2F, page 36). In July 2015, the claimant was doing well and only used a cane if she was going out for long periods (Exhibit 2F, page 15). In February

2016, the claimant was ambulating without any right knee pain. However, her left knee was painful especially when walking up stairs. Thereafter, a left total knee replacement was performed on April 25, 2016 (Exhibit 2F, pages 36-37). In October 2016, the claimant exhibited full extension, flexion to 130 degrees with mild pain and no erythema, effusion or ecchymosis (Exhibit 2F, page 20); and her pain was decreased (Exhibit 2F, page 21). . . .

During ongoing care with Dr. Pearl in January 2017 and after the date last insured, the claimant was reported to be getting very active with intermittent pain with more activity. Knee supports were prescribed, but at that time, Dr. Pearl assessed that the claimant could return to work as a pastry chef (Exhibit 8F, page 1). With regard to the opinions of Dr. Pearl, little weight is given to his conclusory statements of disability (Exhibit 2F, pages 7, 28), as they do not offer functional limitations and the ultimate finding of disability is reserved to the Commissioner. Some weight is given to the January 2017 assessment finding that the claimant would be able to return to work as a pastry chef, since it offers a more specific assessment. However, greater limitations appear appropriate in light of the findings on examinations and the claimant's hearing testimony.

R. 18–19. Plaintiff concedes that Dr. Pearl's conclusory 2015 and 2016 opinions that Plaintiff was unable to work addressed a matter reserved exclusively to the Commissioner. *Plaintiff's Brief*, ECF No. 14, p. 36. Nevertheless, Plaintiff goes on to argue,

this does not call for a treating physician's entire diagnosis and analysis to not be given weight. Dr. Pearl's updated medical records in 8F and 19F are completely ignored, including an independent medical examination report. There is no reason given why its findings should not be given weight considering Plaintiff's treatment with Dr. Pearl.

*Id*. Plaintiff's arguments are not well taken. As a preliminary matter, Plaintiff does not explain what "diagnosis" and "analysis" Dr. Pearl provided but which the ALJ failed to assign any weight. *See id*. The Court therefore finds no merit in Plaintiff's undeveloped argument in this regard. *Cf. Atkins*, 2020 WL 1970531, at *4; *Wright*, 783 F. App'x at 245; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."). In any event, Plaintiff has specified no functional limitations flowing from this unidentified diagnosis and "[a] diagnosis alone . . . does not demonstrate disability." *Foley v.*

*Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Shinseki*, 556 U.S. at 409–10; *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act").

Plaintiff further argues that the ALJ improperly "ignored" Dr. Pearl's "updated medical records in 8F and 19F . . . including an independent medical examination report." *Plaintiff's Brief*, ECF No. 14, p. 36. Again, however, Plaintiff's conclusory argument provides no explanation as to what relevant evidence those medical records contain and the Court has no obligation to hunt through pages of records or to otherwise speculate as to what evidence supports Plaintiff's conclusory argument. *See Atkins*, 2020 WL 1970531, at *4; *Wright*, 783 F. App'x at 245; *Claxton*, 766 F.3d at 307.

Moreover, the ALJ specifically considered Dr. Pearl's 2017 opinion contained in Exhibit 8F, R. 440, and assigned it "some weight[,]" not "little to no weight" as Plaintiff represents. *See* R. 19; *Plaintiff's Brief*, ECF No. 14, p. 36. The remaining two pages of Exhibit 8F do not contain any opinion from Dr. Pearl of Plaintiff's functional limitations, *see* R. 440−41, so there was nothing for the ALJ to weigh. *See Paczkoski v. Colvin*, No. 3:13-CV-01775, 2014 WL 4384684, at *9 (M.D. Pa. Sept. 4, 2014) ("Dr. Singh did not opine that Paczkoski had any specific functional limitations or that he was disabled. . . . Thus, there was no opinion of functionality by Dr. Singh that the ALJ could weigh."). It follows, then, that Plaintiff has not shown that explicit consideration of the remaining two pages in exhibit 8F, R. 440−41, undermines the ALJ's RFC determination or otherwise requires a different outcome. *See id.*; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot

accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted).

In addition, Plaintiff mischaracterizes the records in Exhibit 19F, R. 646–79, to the extent that she represents that Dr. Pearl completed an independent medical examination. *Plaintiff's Brief*, ECF No. 14, p. 36. Rather, the only independent medical examination appearing in Exhibit 19F is the one completed by Dr. Ferriter, R. 672–79, which this Court has previously discussed, including, *inter alia*, that it contained no medical opinion of any functional limitation. Similarly, the remaining pages in Exhibit 19F contain no medical opinion of functional limitations. R. 646–71. Notably, these pages simply reflect administrative information and codes, Dr. Pearl's 2015 opinion and opinions from other dates that Plaintiff was unable to work, and evidence that Plaintiff's condition was improving and that she could ambulate without pain. *See* R. 646 (demographic data), 647–56 (diagnosis and consultation codes), 657–59 (copies of Workers' Compensation checks), 660 (Dr. Pearl's letter dated November 8, 2018, advising of costs for retrieving and copying medical records), 661 (Dr. Pearl's progress note dated January 13, 2015, noting that Plaintiff was "[d]oing well"), 662–63 (diagnosis and consultation codes), 664 (Dr. Pearl's progress note dated July 12, 2016, noting that Plaintiff "is doing well" and "has full extension and flexion to 118 degrees" with only "some intermittent pain"), 665 (Dr. Pearl's progress note dated May 10, 2016, noting that Plaintiff was two weeks status post left total knee replacement and that her wound is well healed), 666–67 (Dr. Pearl's progress note dated October 20, 2015, noting that Plaintiff is "not complaining of any pain" and that she "ambulates full weightbearing without any pain whatsoever using an assistive device"), 668–69 (reflecting Dr. Pearl's 2015 opinion that Plaintiff is unable to work, duplicative of R. 336–37), and 670–71

(reflecting Dr. Pearl's progress note dated April 5, 2016, opining that Plaintiff was totally disabled).

In short, Plaintiff has not shown that the ALJ erred in his consideration of Dr. Pearl's opinions and records or that any such error warrants remand. *See Shinseki*, 556 U.S. at 409–10; *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case").

### 2.    David Deramo, M.D.

Plaintiff also challenges the ALJ's consideration of the opinions of David Deramo, M.D. *Plaintiff's Brief*, ECF No. 14, p. 36. The ALJ specifically considered x-rays and other medical findings during Plaintiff's course of care with Dr. Deramo:

> During care with Dr. Deramo, in April 2017, x-rays of the bilateral knees showed status-post total knee replacement and no evidence of loosening or disruption of hardware (Exhibit 10F, pages 11-12); in June 2017 CT patellar tracking showed abnormal lateral tilt and subluxation of the resurfaced left patella present in full extension and shallow degrees of flexion normalizing with flexion approaching 40 and 50 degrees (Exhibit 10F, page 13).

R. 19. The ALJ went on to assign "[l]ittle weight" to Dr. Deramo's opinion that Plaintiff was unable to return to work and "[s]ome weight" to Dr. Deramo's opinion of Plaintiff's specific functional limitations, reasoning as follows:

> In June 2017, Dr. Deramo assessed that the claimant may not return to work at this time, due to possible revision surgery to the left knee (Exhibit 10F, page 14). In January 2018, Dr. Deramo, who last treated the claimant in June 2017 and on three occasions in total, assessed that she was able to sit for more than four hours in an eight-hour day and stand/walk less than two hours in an eight-hour day. He confirmed that the claimant's legs did not need to be elevated while seated, but that she would have to take unscheduled breaks during an eight-hour day. Lifting/carrying was allowed to less than 10 pounds; and pushing/pulling with the lower extremities, bending, squatting and kneeling were restricted (Exhibit 12F). Little weight is given to the June 2017 indication of not being able to return to work, which goes to an issue reserved for the Commissioner. Some weight is given to the more detailed assessment since it is offered by a treating specialist. However, the opinion was given more than a year after the last office visit. Additionally treatment

by Dr. Deramo commenced, and the assessment was made, after the expiration of the claimant's date last insured. Nevertheless, these limitations have generally been incorporated into the residual functional capacity to the extent supported by the overall record, including that the claimant does not need to elevate her legs with sitting.

R. 20. The Court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. § 404.1527(c)(1)−(3), (5)−(6); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ reasonably found that a doctor's opinion nearly five years after the date last insured "lacked probative value" because it "shed no light" on the claimant's condition during the relevant period); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner."); *Porter v. Comm'r of Soc. Sec.*, No. CV 18-03744, 2019 WL 2590994, at *4–5 (D.N.J. June 25, 2019) (finding that the ALJ did not err in assigning little weight to a physician's opinion on the basis that the opinion "'was rendered more than a year after [Plaintiff's] date last insured and [it] does not indicate that it relates back' to the disability evaluation period") (citations omitted). Notably, Plaintiff simply complains in conclusory fashion−and mistakenly− that the "ALJ afforded little to no weight to the opinions of . . . Dr. Deramo (AR 49-50 [R. 19 − 20])" with no explanation as to how the ALJ erred or why the ALJ should have assigned greater weight to a specific functional limitation that would have resulted in a different RFC determination. *See Plaintiff's Brief*, ECF No. 14, p. 36. Plaintiff has therefore failed to persuade the Court that the ALJ erred in his consideration of Dr.

Deramo's opinions or that, even if there was an error, such error requires remand. *See Shinseki*,
556 U.S. at 409–10; *Wright*, 783 F. App'x 243, 245.

### 3.    Michael Palmeri, M.D.

Plaintiff goes on to challenge the ALJ's consideration of Michael Palmeri, M.D.,
complaining that the ALJ "ignore[ed]" this evidence with "no adequate explanation." *Plaintiff's
Brief*, ECF No. 14, p. 36. This Court disagrees. The ALJ specifically considered—and did not
ignore —Dr. Palmeri's records: "In 2008 and 2009, Dr. M. Palmeri assessed a total temporary
disability on multiple occasions (Exhibit 13F); however, no weight is given to these assessments
as they were made more than three years before the alleged onset date." R. 20. Moreover, and as
previously explained and as Plaintiff concedes, *Plaintiff's Brief*, ECF No. 14, p. 36, opinions of
total disability and inability to work are a matter reserved to the Commissioner. *See Louis*, 808 F.
App'x at 118; *Zonak*, 290 F. App'x at 497. Moreover, although the ALJ "may consider"
evidence generated prior to the alleged disability onset date, such evidence is not entitled to any
specific weight, particularly where there is no opinion as to any functional limitations. *See Louis*,
808 F. App'x at 118 (internal quotations marks and citations omitted); *Paczkoski*, 2014 WL
4384684, at *9. While Plaintiff goes on to contend that Dr. Palmeri's records were "very detailed
and included a history of Plaintiff's past treatment[,]" including that Plaintiff had damage to the
meniscus of both knees[,]" *Plaintiff's Brief*, ECF No. 14, p. 36, these assertions do not persuade
the Court that the ALJ erred in his assessment of Dr. Palmeri's records. Plaintiff does not
identify any opinion of functional limitations contained in these records nor does she contend
that any functional limitation flows from the damaged meniscus in Plaintiff's knees that the ALJ
failed to consider and which is not adequately accommodated by the RFC determination. *See id.*;
*see also* R. 16–17 (reflecting RFC determination), 18 (noting record evidence that Plaintiff

21

sustained injuries to bilateral knees in a work-related accident in 2008 and considering evidence dated in 2013 relating to meniscal tear). For these reasons, the Court cannot conclude that ALJ erred in his consideration of Dr. Palmeri's medical records or that, even if there was an error, such error requires remand. *See Shinseki*, 556 U.S. at 409–10; *Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780.

### 4.   Physical therapy records

Finally, Plaintiff complains that "the ALJ failed to accord any weight to the Plaintiff's physical therapy records and their analysis of her activities of daily living. (AR 389-431 [R. 354–96]; 435-456 [R. 399–420]; 636-681 [R. 599–644]). These records note that Plaintiff had difficulty with prolonged standing and walking, negotiating stairs, bending, and getting in/out of the car." *Plaintiff's Brief*, ECF No. 14, p. 37. Plaintiff's arguments are not well taken. Here, contrary to Plaintiff's representation that the ALJ "failed to accord *any weight* to Plaintiff's physical therapy records and their analysis of her activities of daily living[,]" *id*. (emphasis added), the ALJ specifically considered these records and activities but assigned "little weight[,]" reasoning as follows:

> Post-operatively, the claimant received physical therapy (Exhibits 1F; 3F; 5F; 7F). At that time, it was noted that the claimant had increased ranges of motion and decreased pain since beginning therapy and had recovered well. She reported that she was walking up and down the stairs at home while doing laundry (Exhibit 1F, page 2). During that time, the claimant traveled to North Carolina for 11 days and reported only mild pain (Exhibit 1F, page 14); she reported an ability to ascend stairs without pain (Exhibit 1F, page 16); and walking 10,000 steps the day prior (Exhibit 1F, page 28). Pain waxed and waned throughout care (Exhibit 1F). In 2017, the claimant reported pain when performing squats, lunges and repeated bending activities and prolonged standing and walking. She was fitted for a brace at that time (Exhibit 7F, page 1). Disability index scores throughout physical therapy notes of treatment (Exhibits 1F; 3F; 5F; 7F) are given little weight in this decision as they were not made by an acceptable medical source and do not offer specific functional limitations.

22

R. 19. The Court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. §

404.1513(a), (d) (eff. Sept. 3, 2013 to Mar. 26, 2017) (applying to claims filed before March 27,

2017,[6] and providing that physical therapists were not "acceptable medical sources" but instead

were characterized as "other sources"); 20 C.F.R. § 404.1502(a); *Foley*, 349 F. App'x at 808;

*Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 878–79 (3d Cir. 2005)

("Consequently, the rules for evaluating acceptable medical source statements do not apply to the

physical therapist's notes" and, therefore, "[s]tatements from a physical therapist are entitled to

consideration as additional evidence, but are not entitled to controlling weight") (citations

omitted); *Paczkoski*, 2014 WL 4384684, at *9. Moreover, Plaintiff does not explain how

evidence of Plaintiff's "*difficulty with* prolonged standing and walking, negotiating stairs,

bending, and getting in/out of the car" was not sufficiently accommodated by the RFC

determination. *Plaintiff's Brief*, ECF No. 14, p. 37 (emphasis added); *see also* R. 18–19

(reflecting RFC for sedentary work with exertional limitations, including, *inter alia*, only

occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally

balance; occasionally stoop; never kneel, crouch or crawl; only one to two minutes of standing at

the workstation after 30 minutes of sitting, and would require one to two minutes of sitting at the

work station after 30 minutes of standing or walking, during which periods Plaintiff would be off

task in addition to usual breaks; would require the use of a cane with the dominant hand for

standing and walking); *Shinseki*, 556 U.S. at 409–10; *Padgett v. Comm'r of Soc. Sec.*, No. CV

16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated

no analysis of the evidence, the Court does not understand what argument Plaintiff has made

here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and

---

[6] As previously noted, Plaintiff filed her claim on October 28, 2016.

left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

In short, for all these reasons, the Court concludes that the ALJ's evaluation of the opinions of Richard Pearl, M.D., David Deramo, M.D., Michael Palmeri, M.D., and of the physical therapy records, enjoys substantial support in the record.

### C.    Subjective Complaints

Plaintiff also challenges the ALJ's consideration of her subjective complaints, contending that the ALJ erred in failing to discuss her testimonial evidence that supports these complaints and mischaracterized her testimony, thus requiring remand. *Plaintiff's Brief*, ECF No. 14, pp. 37−40. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[7]

In the case presently before the Court, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 17–19, 21. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause

---

[7]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ detailed years of medical evidence and record testimony to support his findings. R. 18−21. For example, in October 2016, Plaintiff exhibited full extension, flexion to 130 degrees with mild pain and no erythema, effusion or ecchymosis and her pain had decreased; post-operatively, Plaintiff had increased ranges of motion and decreased pain since beginning physical therapy and had recovered well. *Id*. The ALJ also went on to explain as follows:

> The claimant's reports of symptoms are inconsistent with her reported daily activities including travel, walking 10,000 steps in a day, climbing stairs without pain and driving. The record does include some complaints related to sitting, and some issues at times transferring to standing from sitting, but main focus appears to be standing, walking and climbing stairs. It is noted that the claimant has had less function at times around her surgery, but the record does not reflect greater limitations for a period of at least 12 months at a time.

> Based on the entire record, including the testimony of the claimant, the undersigned concludes that the evidence fails to support the claimant's assertions of total disability. Despite the evidence demonstrating that the claimant has suffered from medically determinable "severe" impairments, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work. The residual functional capacity outlined above accounts for the claimant's testimony supported by medical evidence of record, regarding vocational limitations that her conditions would place on her. Although the claimant suffers some limitation due to her impairments, and as a result, her capacity to perform work is affected, the undersigned finds that the claimant retains the residual functional capacity to perform the exertional demands of a wide range of light [sic] work.

> The residual functional capacity accounts for the vocational limitations that would be placed upon the claimant based on her medically determinable impairments. Specifically, the claimant has provided evidence and testimony that she suffers from bilateral knee osteoarthritis, status post bilateral total knee replacement and left total knee replacement revision, lumbar degenerative disc disease with scoliosis and obesity. The light exertional level of the residual functional capacity accounts for the limitations that her conditions would place upon her, as well as the above specified limitations to the lower extremities. Also, she is limited to unskilled work

due to pain issues and concentration from that, rather than from psychological impairment.

R. 21. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Although Plaintiff cites to portions of her testimony that she believes supports her position and undermines the ALJ's findings, *Plaintiff's Brief*, ECF No. 14, pp. 37–38, the Court is not persuaded that the ALJ's consideration of Plaintiff's activities and abilities contradicts Plaintiff's testimony about her mobility. Moreover, while Plaintiff complains of limitations in walking and focusing, the RFC determination, as previously noted, specifically addresses such limitations and Plaintiff has not explained how these limitations are deficient. *See id.*; *see also* R. 16–17 (reflecting RFC for sedentary work with exertional and nonexertional limitations, including, *inter alia*, only occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance; occasionally stoop; never kneel, crouch or crawl; only one to two minutes of standing at the workstation after 30 minutes of sitting, and would require one to two minutes of sitting at the work station after 30 minutes of standing or walking, during which periods Plaintiff would be off task in addition to usual breaks; would require the use of a cane with the dominant hand for standing and walking; can understand, remember, and carry out simple instructions; can perform simple, routine tasks; can make simple work-related decisions); *Shinseki*, 556 U.S. at 409–10; *Padgett*, 2018 WL 1399307, at *2. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler,* 667 F.3d at 359 ("Courts are not permitted to reweigh the

evidence or impose their own factual determinations [under the substantial evidence standard].");

*Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented

with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the

duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

 For all these reasons, the Court concludes that the ALJ sufficiently explained his

reasoning in evaluating Plaintiff's subjective complaints, and the ALJ's findings in this regard

are supported by substantial evidence in the record and are therefore entitled to this Court's

deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306

F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony

regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v.*

*Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319,

322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where

"the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited

Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment

of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

## VI. CONCLUSION

 For these reasons, the Court **AFFIRMS** the Commissioner's decision.

 The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).


Date: December 15, 2021      *s/Norah McCann King*
             NORAH McCANN KING
           UNITED STATES MAGISTRATE JUDGE